Good morning, Your Honor. My name is Robert Powell, appearing here on behalf of Mr. Simonovskiy. I would like to reserve three minutes at the end by way of rebuttal. We maintain that there are two mistakes that were made by the immigration judge in the Board of Immigration Appeals that are reversible errors. First of all, the immigration judge in the case had no jurisdiction over this case to hear the applications that were being submitted. And second, that in any event. No jurisdiction because he was still a refugee. That's correct. If I follow your theory, it seems to me no immigration judge could ever get jurisdiction. Is that right? No, that's not correct. Basically, there are two ways that the immigration judge can obtain jurisdiction in a case like this. First of all, there are provisions for the termination of refugee status. If refugee status is terminated, then the immigration judge will get jurisdiction over the deportation. And I gather the district director has to do that? The district director has to do that. That's correct. The second way in which the immigration judge can get jurisdiction is in the way that occurred in the Garcia-Alzugaray case. That is that the board suggested. That is to say that after before the person, the refugee, is put in removal proceedings, he has to first be referred to the district director for a determination and processing of his refugee claim. If the district director determines that he's not admissible into the United States, then the removal proceedings will be initiated. In that first, with respect to that first consideration made by the district director, there are two things that have to happen. First of all, a determination as to admissibility. And second, a consideration of the waiver, if there is one appropriate. Those steps have to be taken first, and then the person is referred to the immigration court for removal proceedings if the applications are not. Make a difference that in this case, the petitioner status was derivative. No, because under the statute, under Section 207, a derivative comes in as a refugee and is processed in the same manner as as a refugee, as his father was very clearly under the statute. Under Section 207, a derivative is treated and processed the same way as a primary. But there might be a difference if he conceded that he was removable. The ñ I'm not sure. Let's see. Does it make any difference that he conceded that he's removable? I don't think that that makes any difference, because in any event, whether he concedes or doesn't concede, those preliminary ñ that preliminary processing has to ñ is required to be done before the person is ñ can be put in removal proceedings. The statute is very clear. The statute and the regulations are both very clear about that. Under Section 209A of the Immigration Act, the statute provides that a refugee shall be returned to the custody of the Immigration Service for this processing by the district director. That's mandatory. He shall be returned to the custody of the Immigration Service. And, second, the regulations, CFR Section 209.1, provide that the sole and exclusive procedures for considering a refugee's application for adjustment of status are those set out in the regulations, which, of course, require the processing by the district director. So the statute and the regulations are very clear on that. And, in addition, there's a precedent decision by the Board of Immigration Appeals saying that ñ upholding that. The Garcia-Azuguri case in which the board said, in a case just like this one, that the immigration judge did not have jurisdiction. The proceedings had to be terminated and sent back to the district director for that processing. So that ñ it's very clear, we submit, that the immigration judge did not have jurisdiction. Now, there was a discussion of jurisdiction at the ñ by the immigration judge at the deportation hearing. And the immigration judge indicated to the counsel that were there at the hearing that he thought he had jurisdiction under Section ñ under 8 CFR Section 235.6 and proceeded to make his decision based on the assumption that he had jurisdiction under that provision. Now, that was ñ that was simply a mistake. Section 235.6, the provision pointed to by the immigration judge, relates to individuals who are in expedited removal proceedings, people who are stopped at the border and who are excludable because they do not have the proper documents or because they made a false statement upon admission. The immigration judge operated under that assumption then, but that was incorrect, and he did not have jurisdiction on that ñ on the basis of that regulatory provision. The question presented by the immigration service then, the preliminary question, is whether ñ whether that jurisdictional defect can be cured or corrected by the consent of counsel. Counsel agreed that we'll go forward assuming that the immigration judge has jurisdiction under this provision, but that was a mistake. We submit under ñ under the Clapp case, for example, a Ninth Circuit decision, that in the context of administrative proceedings in front of an administrative court, jurisdiction ñ if jurisdiction does not exist, jurisdiction cannot be created by the consent of the parties. That was a tax court case and ñ in which the court held that an Article I courtís, an administrative courtís jurisdiction is treated the same way as subject matter jurisdiction in an Article III court. Maybe that's your answer, but what about the government's position that you didn't exhaust your administrative remedies on these issues? Right. We submit with respect to this question of whether the immigration judge had jurisdiction, we submit that there ñ that there is not a requirement to exhaust administrative remedies. It's a question of subject matter jurisdiction. Similarly, in an Article III court, that issue of jurisdiction can be raised at any time, irrespective of whether or not the issue has been presented on appeal. In the Clapp case, for example, in the Billingsley case, another Ninth Circuit case clearly indicates so. I would like to say just briefly a comment on ñ regarding whether the court has jurisdiction over this alleged discretionary determination, Section 242a to b, whether the court has ñ which purports to preclude jurisdiction over discretionary determinations. I would point out two things. First of all, the adjustment of status occurs under Section 209a. That is not a discretionary adjustment. That's a mandatory adjustment. There's no discretion involved in that adjustment. Now, with respect to the waiver application that Mr. Simonofsky is applying for, the question there is the appropriate legal standard is a legal question, a legal issue, not a question about ñ not a discretionary determination. The immigration ñ Kennedy. The legal issue. The legal issue has to do with the appropriate standard for adjudicating the waiver. The immigration judge said, well, I'll treat this as a Section 212c waiver in accordance with the matter of Marin, not as a Section 209c waiver, the refugee waiver. Those two waivers have different standards. In the Marin case, basically you do this balancing, a discretionary determination to determine whether or not it's in the interest of the country to allow this person to reside in the United States. The 209c waiver is more generous. It's done in the context of refugees, and the statute says that there are special humanitarian concerns. The statute also indicates that the waiver does not have to be granted only if it's a benefit to our country, if it's in the interest of the nation. Also provides for humanitarian purposes and family purposes. A waiver under Section 209c can be granted for those purposes, even if the person  I would submit that the appropriate analogy is to the decision in Cardoza-Fonseca, the Supreme Court case that came out. Another question about the appropriate standard, whether a person applying for asylum is eligible under the well-founded fear standard or under the clear probability of persecution standard. Those are two different standards. The question of whether those two standards are the same or different is, according to the Supreme Court, a legal question. It's a question, the Supreme Court indicates in Cardoza-Fonseca, a question of a pure question of statutory interpretation. I would like to reserve at least a brief time by way of rebuttal. Thank you. Thank you, Your Honors. Good morning. May it please the Court. I'm John Cunningham from the Department of Justice, representing the Attorney General, who is the respondent in this case. The Court will hear me make this morning, both in this case and the case to follow involving Ms. Luis-Fernandez, a series of jurisdictional arguments. In this case, you've seen from our brief, we have a tier of jurisdictional arguments. We have pointed to a series of issues within the Immigration Act that we believe preclude the Court from exerting jurisdiction over this petition for review. In the brief time that we have this morning to discuss this case, I'd like to concentrate with the Court's indulgence on the jurisdictional preclusion that I think has an overarching application to this case, and that is the requirement of failure of exhaustion. A requirement of what? A failure of exhaustion of administrative remedies, Your Honor. Section 242D-1 of the Immigration Act says that a court may review a final order of removal entered against an alien only if the alien has exhausted all the administrative remedies available to him as of right. What about the petitioner's argument that, well, exhaustion doesn't apply to a, you know, jurisdictional defect? I think that's plainly wrong, Your Honor. He, this argument was made for the first time before this Court. The argument is, as you've seen, that the immigration judge didn't have jurisdiction over the removal proceedings in the first place. That is a classic argument that the Board of Immigration Appeals exists to hear. If someone believes that an immigration judge made a mistake, whether it's asserting jurisdiction or applying the wrong standard of law, the proper remedy, the remedy available to the alien as of right is to take an appeal to the board, and the board sits to correct those errors. Do you have a case that says specifically the exhaustion requirement applies when the petitioner is attacking the jurisdiction of the agency? Well, if it's the, not off, no, Your Honor, I do not. But if it's a question here of the jurisdiction of the immigration judge, as opposed to the board, that's what the board sits to correct. This is a question of interpreting a statute, the Immigration Act, and regulations that the board administers, and the board is the appropriate administrative body to decide these questions before you can take an appeal to a circuit court. So at least, so at least where the jurisdictional argument is bottomed on the Immigration Act, the argument is that it, at the very least in that situation, the agency namely the board is competent to address it. Oh, certainly, Your Honor. Interpretation of the, in other words, a matter of interpreting the act. Absolutely, Your Honor. I mean, the board is the agency whose decisions the courts review. The board is the agency whose decisions the court applies. Chevron deference, if that's appropriate. That's the structure that's been erected for determination of these questions. And because the board can address it, there's the obligation to exhaust. Absolutely. Yes, absolutely. The same is true with respect to the other primary issue that my colleague has based his brief on, which is that the immigration judge applied the wrong standard of law in deciding the waiver issue. And again, that's what the board exists to decide. If the board thought that the immigration, that argument was correct, it could have issued a decision and decided the case in Mr. Szymanowski's favor. The cases that my colleague has cited, the tax court decisions and the Plaquemines Harbor case, the Shipping Act decision from the D.C. Circuit, are really distinguishable, first of all, because there, as far as I could tell, there was not a statutory exhaustion requirement in play in those cases. And second, because there was not the two-tier administrative structure available to get these cases decided before you go into the courts of appeals that we have in this case. It's certainly true that courts can reach out and decide jurisdictional issues on their own accord. And it's certainly true that parties can't create jurisdiction by agreement if it didn't exist in the first place. But my argument is really quite simple. The place to decide those issues in the first place is the Board of Immigration Appeals. The other half-argument, if I can call it that, that my colleague has made is to allude to the fact that previous counsel for Mr. Szymanowski has been suspended from practice before the Board of Immigration Appeals. If that is an invitation to the Court to somehow circumvent the statutory exhaustion requirement by rendering a conclusion that, well, if previous counsel knew what he was doing, he would have raised these questions on appeal to the Board, and then he wouldn't have this exhaustion problem, my answer is that ineffective assistance of counsel is yet again an issue that the Board can address. It does it all the time. Often this Court's decisions involve many issues of that kind. There are cases in this circuit indicating that the Court will not require aliens to go through all the precise procedural hoops in order to make an ineffective assistance of counsel claim, but all those cases hold that you must still go to the Board. And you can do that in one of two ways, either by taking a direct appeal from the immigration judge's decision, or if you reach a conclusion that your counsel was incompetent after the Board has acted, then you file a motion to reopen, and that has simply not happened in this case. And so for that reason, on the exhaustion of the failure to exhaust alone, we ask that the Court dismiss this petition for review for lack of jurisdiction. Kennedy. Is this a word about 1252? Szymanowski. I'm sorry, Your Honor? Kennedy. Do we have jurisdiction irrespective of the exhaustion under 1252? Szymanowski. Well, there are two provisions in Section 1252 that we believe bar you from entertaining this case. One is the fact that there is no dispute that Mr. Szymanowski committed a crime involving moral turpitude within 5 years of his entry into the U.S. That's one bar. The second bar is that the Court lacks jurisdiction to review the discretionary determination with respect to the waiver issue. Kennedy. All right. Well, let's talk about the first one. Szymanowski. The first one. Yes. Well, that's plain on its face. I mean, that would, in the tier that I alluded to earlier ---- Kennedy. You've got 10 minutes on this one, so you're going to go to the other step on the next one. Szymanowski. Okay. I have about 3 minutes left. I'd be happy to address it. If we get to that next step, if the failure to exhaust issue is put aside for the moment, Congress has determined that an alien who commits certain kinds of crimes gets to have an administrative proceeding, and you can go between them. For an immigration judge, you can go before a board to try to find a way of getting relief from removal. But if he goes through that process, that that's the end of the line, that he may not seek review in circuit court. Kennedy. Congress didn't distinguish between I.J. and B.I.A. there. Szymanowski. No, sir. No, sir. That's not an exhaustion requirement. It just says that that's the way the system is meant to work. You get your administrative process, but then if you have committed one of those crimes delineated in the statute, you don't go any further. Congress has said that's enough, and there's no dispute. Kennedy. Does that resolve it if we want to get to it? Szymanowski. Yes, it certainly does. I mean, there's no dispute about Mr. Szymanowski's criminal record. He's conceded that he was involved in an armed robbery, and it was a theft, and it was within five years of his entry into the U.S. Kennedy. Does he have any right to apply for a waiver? Szymanowski. Yes. Yes. Yes, he can do that, and he did. Yes, he can apply for a waiver of the removability that's established by his crime. And the argument made now, not made below, but made now, is that the board applied or the immigration judge and the board applied the wrong standard in determining the waiver. My only response to that, Your Honor, is that the reference to humanitarian reasons in Section 209 is capacious, and it seems to allow for almost anything. And I think the board is within its rights to look to the extensive case law developed under Section 212C, both at the board level and in the circuit courts. This Court certainly has rendered a lot of decisions under that provision. And look to see whether the factors that can be balanced by a 212C remedy or, I'm sorry, a 212C application have reasonable application to a 209 waiver. And that's essentially what happened here. If I can circle back to my previous point, on appeal from the immigration judge, Mr. Szymanowski's attorney said, had made no, made no argument that the 212C case law that the immigration judge referred to was wrong. He just thought the judge came out the wrong way. Ultimately, that's a discretionary decision that probably is outside our jurisdiction. I would certainly make that argument, Your Honor, that in waiving the waiver. The ultimate one, the ultimate conclusion. Yes. The ultimate. Yes. I mean, here the board looks at the case. Just so I can better understand, you know, I'm always trying to learn more about how this agency works and how this process really, really works in the real world. Could you just explain to me for a minute about this whole problem of the, his status as a refugee and the argument the counsel made? Yes. I'm more interested in just, I think, for a moment, understanding that argument. Well, he, he, Mr. Szymanowski came in as a derivative refugee. His father was granted a refugee status, and Mr. Szymanowski got it because he was his father's son. Their argument, though, is that he's not subject to removable, that he's not a removable alien until that refugee status is revoked. I, with Your Honor, we made an argument about, on that point in our brief, which basically said that where removability is conceded and clear, that's enough to, to establish removability, and that's what happened in this case. Right. Okay. I understand that, but I'm just trying to understand. Well, I. It's more complicated than, than, than everybody thinks. I mean, in fact. My reluctance, Your Honor, is based on the fact that the board never addressed this issue because it wasn't asked to. And so anything I said here would be speculative. All right. As I understand it, I mean, I've read the same regulations and statute that Mr. Paugh has cited. I've read the case law that he's cited. There does seem to be this process where the refugee label must be removed or should be removed before. All right. Something, something seems to be afoot there. I can't figure out what it, I couldn't quite figure out what it was or is. I'm sorry, Your Honor, I can't. That's okay. I'm just, I was just. We're always going to have other problems with this. My time is up. Our, our plea is simply that the petition for review be dismissed for lack of jurisdiction for a failure to exhaust, if nothing else. And if there are no further questions, I thank the Court for your attention. Thank you. Thank you. Mr. Butler. Yes, Your Honor. Just briefly on the issue of the discretionary determination and, and this, whether or not the 209C, the standard applied by the immigration judge is a discretionary or, or a legal matter, I would also point that the 209C waiver must be adjudicated and it's Congress's intention to, that that be adjudicated in the context of the international agreements under which the Refugee Act was, was enacted. When, when Congress enacted these provisions in 1980, it was very clear in the legislative history that this was being done in order to bring the United States into compliance with, with the international law on, on refugees. And in particular, with respect to the waiver issue, once a person under the Refugee Convention, Article 32, once a person has been recognized as a refugee, that person should not be removed from, from the protecting country unless there's, unless it's been determined that there's a threat to national security or the person poses a threat to public order. And the waivers that are adopted in Section 209C are, do implement that in the sense that in making a decision on the 209C waiver and applying the appropriate standard, that should be brought in, that should be connected with the, with the provisions in the, in the international law. That's very clearly Congress's intention. And the, therefore, it's not just a matter of discretion. I think we indicated before, ultimately, when the immigration judge applies the correct standard, you know, that may be a discretionary decision not subject to review. But the, but the preliminary question as to what that standard is, whether the waiver should be granted because it's in the interest of the country under Section 209, 212C, or on the other hand, for humanitarian and family purposes, that initial threshold question is a legal question as to what the appropriate standard is. I have nothing else, Your Honor. Alright. Thank you. Thank you. Thank you. Thank both counsels, this case is submitted for decision.
judges: Reavley , Tashima, Paez